UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

<u>**FOR PUBLICATION**</u>

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01699 (CGM) |
| Plaintiff, | |
| v. | |
| ROYAL BANK OF CANADA, individually and as successor in interest to Royal Bank of Canada (Asia) Limited; GUERNROY LIMITED; RBC TRUST COMPANY (JERSEY) LIMITED; BANQUE SYZ S.A., as successor in interest to Royal Bank of Canada (Suisse) S.A.; RBC DOMINION SECURITIES INC.; AND RBC ALTERNATIVE ASSETS, L.P., | |
| Defendants. | |

## MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS

<u>**A P P E A R A N C E S**</u>:

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA*

*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
By:     Howard L. Simon
        Kim M. Longo
        Alan D. Lawn

*Attorneys for Defendants*
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
By:     Anthony L. Paccione
        Mark T. Ciani


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Royal Bank of Canada (as successor in interest to Royal Bank of Canada (Asia) Limited ("RBC Asia")[1]), Guernroy Limited ("Guernroy"), RBC Trust Company (Jersey) Limited ("RBC Trust Jersey"), Banque SYZ S.A. ("Banque SYZ") (as successor in interest to Royal Bank of Canada (Suisse) S.A.)[2], RBC Dominion Securities Inc. ("RBC Dominion"), and RBC Alternative Assets, L.P. ("RBC Alternative") (collectively, "Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion seek dismissal for lack of personal jurisdiction. Defendants also seek to dismiss for failure to state a claim due to the

---

[1] Royal Bank of Canada is being sued as successor in interest to RBC Asia pursuant to the Stipulation and Order Regarding Changes to Defendants. (Stip., ECF No. 142). Royal Bank of Canada's motion to be substituted in place of RBC Asia as a party in this action was granted by the Second Circuit on August 22, 2018. (*See* Mot. Order, *In re Picard*, No. 17-2992, ECF No. 1255 (2d Cir. August 22, 2018)).

[2] Banque SYZ is being sued as the successor in interest to Royal Bank of Canada (Suisse) pursuant to the Stipulation and Order Regarding Changes to Defendants. (Stip.). Banque SYZ acquired Royal Bank of Canada (Suisse) on August 28, 2015 and the entities merged on December 11, 2015.

statute of limitations, the safe harbor, and improper adoption by reference.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by the Defendants and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012. (Compl., ECF[3] No. 1). The

Trustee filed an amended complaint ("Amended Complaint"), on May 3, 2022. (Am. Compl.,

ECF No. 145). Via the Amended Complaint, the Trustee seeks to recover $77,217,644 in

subsequent transfers made to Defendants through Fairfield Sentry Limited ("Fairfield Sentry"),

Rye Select Broad Market Prime Fund (*f/k/a* American Masters Broad Market Prime Fund, L.P.,

"Rye Prime Fund"), Rye Select Broad Market Portfolio Limited (*f/k/a* American Masters Broad

Market Fund II Limited, "Rye Portfolio Limited"), and Rye Select Broad Market Fund LP (*f/k/a*

American Masters Broad Market Fund L.P., "Rye Broad Market") (together with Rye Prime

Fund and Rye Portfolio Limited, the "Rye Funds"). (*Id.* ¶ 2). The Trustee seeks to recover

$38,019,770 from Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC

Dominion in subsequent transfers made through Fairfield Sentry. (*Id.* ¶ 160). The Trustee seeks

to recover $39,197,874 from Royal Bank of Canada, Guernroy, and RBC Alternative in

subsequent transfers made through the Rye Funds. (*Id.* ¶¶ 171, 180). The Trustee has provided a

table with a breakdown of the funds subsequently transferred to each Defendant and the Court

has added the left-most column for clarity:

| Defendant | BLMIS feeder fund(s) | Transfers |
|---|---|---|
| Royal Bank of Canada | • Fairfield Sentry | $19,130,650 |
|  | • Rye Prime Fund | $938,000 |
| Guernroy | • Fairfield Sentry | $13,025,711 |
|  | • Rye Portfolio Limited | $4,836,009 |
| RBC Trust Jersey | • Fairfield Sentry | $178,459 |

---

[3] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01699-cgm.

| Banque SYZ | • Fairfield Sentry | $3,726,744 |
| RBC Dominion | • Fairfield Sentry | $1,958,206 |
| RBC Alternative | • Rye Prime Fund | $15,346,605 |
| | • Rye Broad Market | $18,077,260 |

(*See id.* at 3).

Royal Bank of Canada is a Schedule I bank under the Bank Act of Canada with its headquarters located in Toronto, Canada. (*Id.* ¶ 50). Royal Bank of Canada is a registered bank with the U.S. Federal Reserve. (*Id.* ¶ 50). Guernroy is a limited company incorporated in the Channel Islands and its registered office is in the Channel Islands. (*Id.* ¶ 52). RBC Trust Jersey is a private limited company incorporated in the Channel Islands and its registered office is in the Channel Islands. (*Id.* ¶ 53). Banque SYZ is a *société anonyme* organized under the laws of Switzerland and its principal place of business is in Switzerland. (*Id.* ¶ 54). RBC Dominion is a federal corporation organized under the laws of Canada and its principal place of business is in Toronto, Canada. (*Id.* ¶ 55). RBC Alternative is a limited partnership organized under the laws of Delaware and its principal place of business is in New York, New York. (*Id.* ¶ 56). Royal Bank of Canada is the 100% indirect parent of each other Defendant. (*Id.* ¶ 49).

<u>Fairfield Sentry Transfers</u>

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry to avoid and recover fraudulent transfers of customer property in the amounts of approximately $3 billion. (*Id.* ¶ 153). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 154). As part of their settlement, Fairfield Sentry consented to judgment in the amounts of $3.054 billion. (Consent J., 09-01239-cgm, ECF Nos. 109). Only $70 million has been repaid to the BLMIS customer property estate. (Settlement Agreement, 09-01239-cgm, ECF

No. 169). The Trustee commenced a number of adversary proceedings against Fairfield

Sentry's subsequent transferees, like Royal Bank of Canada, Guernroy, RBC Trust Jersey,

Banque SYZ, and RBC Domininon, to recover missing customer property.

The subsequent transfers the Trustee seeks to collect from Royal Bank of Canada,

Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Domininon were derived from investments

with BLMIS made by Fairfield Sentry. (*Id.* ¶¶ 160–63). The Trustee alleges that subsequent

transfers from Fairfield Sentry to Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque

SYZ, and RBC Domininon total at least $38,019,770. (*Id.* Ex. C).

Rye Fund Transfers

Following BLMIS's collapse, the Trustee filed an adversary proceeding against

Tremont Group Holdings ("Tremont") and dozens of its affiliates to avoid and recover

fraudulent transfers of customer property in the amount of approximately $2.1 billion. (*Id.* ¶

164). The Rye Funds were named defendants alongside their manager, Tremont. (*See*

Tremont Compl., *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. 10-05310, ECF No. 1, (the

"Tremont Complaint")). Tremont owned, managed, and operated the Rye Funds.[4] (Am.

Compl. ¶ 70). The Rye Funds had no employees of their own and acted through Tremont

Group officers who operated the Rye Funds. (*Id.*).

In 2011, the Trustee settled with Tremont and its affiliates, including the Rye Funds.

(*Id.* ¶ 82). As part of the settlement, Tremont and the Rye Funds consented to a judgment in

the amount of $1.025 billion ("Tremont Settlement"). (Order, Adv Pro. 10-05310-brl, ECF

No. 38). The Tremont Settlement provides that the Trustee may seek additional recovery from

any non-settling defendant or subsequent transferee. (*Id.* at 6). The Trustee commenced a

---

[4] The Fairfield and Rye Funds are considered "feeder funds" of BLMIS because the intention of the funds was to invest all or substantially all of their assets in BLMIS. (*Id.* ¶ 2).

number of adversary proceedings against Tremont subsequent transferees, like Royal Bank of Canada, Guernroy, and RBC Alternative, to recover the missing customer property.

The subsequent transfers the Trustee seeks to collect from Royal Bank of Canada, Guernroy, and RBC Alternative were derived from investments with BLMIS made by the Rye Funds through its manager, Tremont.  (Am. Compl. ¶¶ 164–170; Exs. D–E).

The Trustee alleges that BLMIS made initial transfers to Rye Broad Market of approximately $380 million, including $252 million made within six years of the filing date and $60 million made within two years of the filing date.   (Am. Compl. ¶¶ 166–68, Exs. D–E). The Trustee has alleged that, based on his investigations, $18,077,260 transferred from BLMIS to the Rye Broad Market was subsequently transferred to RBC Alternative.  (*Id.* ¶ 171, Ex. F).

The Trustee alleges that BLMIS made initial transfers to Rye Prime Fund of approximately $1 billion, including $945 million made within six years of the filing date and $495 million made within two years of the filing date.   (Am. Compl. ¶¶ 175–77, Exs. G–H). The Trustee has alleged that, based on his investigations, $16,284,605 transferred from BLMIS to the Rye Broad Market was subsequently transferred to Royal Bank of Canada and RBC Alternative.  (*Id.* ¶ 180, Ex. I).

The Trustee alleges that BLMIS made initial transfers to Rye Portfolio Limited of approximately $620 million, including $609 million made within six years of the filing date and $350 million made within two years of the filing date.   (Am. Compl. ¶¶ 184–86, Exs. J–K). The Trustee has alleged that, based on his investigations, $4,836,009 transferred from BLMIS to the Rye Portfolio Limited was subsequently transferred to Guernroy.  (*Id.* ¶ 189, Ex. L).

In their motion to dismiss, Royal Bank of Canada, Guernroy, RBC Trust Jersey, and RBC Dominion seek dismissal for lack of personal jurisdiction.  Defendants also seek to dismiss for

failure to state a claim due to the statute of limitations, the safe harbor, and improper adoption by reference.  The Trustee opposes the motion to dismiss.   For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

**Personal Jurisdiction**

Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion object to the Trustee's assertion of personal jurisdiction.  (Mem. L. 5–16, ECF No. 155).  In the Amended Complaint, the Trustee argues that the Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion purposefully availed themselves of the laws of the United States.  (Am. Compl. ¶¶ 61–79).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A*., 722 F.3d 81, 85 (2d Cir. 2013) (explaining that an averment of facts is necessary only after discovery).

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.  Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.  Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n.*, 916 F.3d at 150 (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

**Minimum Contacts**

Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion argue that the Trustee has not alleged that Foreign Defendants had sufficient contacts with New York with regard to the Fairfield Sentry and Rye Funds transfers. (Mem. L. 7–16, ECF No. 155). The Amended Complaint suggests otherwise. In the Amended Complaint, the Trustee alleges that "each defendant knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS via one or more of Fairfield Sentry [and the Rye Funds] which was managed and operated out of New York." (Am. Compl. ¶ 68, ECF No. 145). The Trustee has alleged that Fairfield Sentry invested a large majority its assets in BLMIS. (*See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted

by reference at paragraph 153 of this Amended Complaint).  The Trustee has also alleged that

the Rye Funds existed for the purpose of investing in BLMIS.  (*See* Tremont Compl. ¶ 5, *Picard*

*v. Tremont Grp. Holdings, Inc.*, Adv. Pro. 10-05310 ECF No. 1) ("During all times applicable to

this action, virtually 100% of the monies invested in [the Rye Funds] were given to Madoff and

deposited with BLMIS") (adopted by reference, at paragraph 80, of this Amended Complaint).

<u>New York Bank Accounts</u>

Where a defendant chooses to use a United States bank account to receive funds,

exercising personal jurisdiction over the defendant for causes of action relating to those transfers

is constitutional.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549

B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank* (*In re Arcapita Bank*

*B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal

jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still

chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986

(JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New

York long-arm statute based solely on defendant's use of New York account to receive payment

at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal

jurisdiction over [RBC Defendants]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV.

9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit

have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account

in New York where the use of that account was held to lay at the very root of the plaintiff's

action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir.

2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. 2013)

(same).

i.    *Royal Bank of Canada*

The Trustee has alleged that Royal Bank of Canada used an account at JPMorgan Chase Bank in New York to receive redemptions from and remit subscriptions to Fairfield Sentry and Rye Prime Fund. (Am. Compl. ¶ 78). The Trustee has also alleged that Royal Bank of Canada exclusively used this bank account in New York "for all of [its] subscriptions and redemptions based on the consistent use of them over time and because the Trustee has seen no evidence of any other accounts designated or used." (*Id.*). The Trustee has also alleged that the subscription payments Royal Bank of Canada sent to Fairfield Sentry were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (Am. Compl. ¶ 79). The Trustee has alleged that by using this account, Royal Bank of Canada "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 78).

ii.    *Guernroy*

The Trustee has alleged that Guernroy used an account at JPMorgan Chase Bank in New York to receive redemptions from Fairfield Sentry and Rye Porfolio Limited. (Am. Compl. ¶ 78). The Trustee has alleged that Guernroy used an account at Deustche Bank AG in New York to remit subscriptions. (*Id.*). The Trustee has also alleged that Guernroy exclusively used these bank accounts in New York "for all of [its] subscriptions and redemptions based on the consistent use of them over time and because the Trustee has seen no evidence of any other accounts designated or used." (*Id.*). The Trustee has also alleged that the subscription payments Guernroy sent to Fairfield Sentry were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (Am. Compl. ¶ 79). Guernroy sent its subscription payments to and received redemption payments from Rye Portfolio Limited through Rye Portfolio Limited's New

York bank account "beginning at least as early as the fall of 2006." (*Id.*). The Trustee has alleged that by using these accounts, Guernroy "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 78).

### iii. *RBC Trust Jersey*

The Trustee has alleged that RBC Trust Jersey used accounts at Deutsche Bank and JPMorgan Chase Bank in New York to receive redemptions from and remit subscriptions to Fairfield Sentry. (Am. Compl. ¶ 78). The Trustee has also alleged that RBC Trust Jersey exclusively used these bank accounts in New York "for all of [its] subscriptions and redemptions based on the consistent use of them over time and because the Trustee has seen no evidence of any other accounts designated or used." (*Id.*). The Trustee has also alleged that the subscription payments RBC Trust Jersey sent to Fairfield Sentry were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (Am. Compl. ¶ 79). The Trustee has alleged that by using these accounts, RBC Trust Jersey "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 78).

### iv. *Banque SYZ*

The Trustee has alleged that Banque SYZ used an account at Deutsche Bank in New York to receive redemptions from and remit subscriptions to Fairfield Sentry. (Am. Compl. ¶ 78). The Trustee has also alleged that Banque SYZ exclusively used this bank account in New York "for all of [its] subscriptions and redemptions based on the consistent use of them over time and because the Trustee has seen no evidence of any other accounts designated or used." (*Id.*). The Trustee has also alleged that the subscription payments Banque SYZ sent to Fairfield Sentry

were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (Am. Compl. ¶ 79). The Trustee has alleged that by using this account, Banque SYZ "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 78).

    *v.* *RBC Dominion*

   The Trustee has alleged that RBC Dominion used an account at JPMorgan Chase Bank in New York to receive redemptions from and remit subscriptions to Fairfield Sentry. (Am. Compl. ¶ 78). The Trustee has also alleged that RBC Dominion exclusively used this bank account in New York "for all of [its] subscriptions and redemptions based on the consistent use of them over time and because the Trustee has seen no evidence of any other accounts designated or used." (*Id.*). The Trustee has also alleged that the subscription payments RBC Dominion sent to Fairfield Sentry were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (Am. Compl. ¶ 79). The Trustee has alleged that by using this account, RBC Dominion "derived significant revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 78).

Subscription Agreements

    *i.* *Fairfield Sentry Subscription Agreements*

   The Trustee has alleged that Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion each signed subscription agreements with Fairfield Sentry and that each time they signed those defendants affirmed that they read the fund's private placement memoranda. (*Id.* ¶ 71). Based on these defendants having acknowledged reading the private

placement memoranda, the Trustee has alleged that Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion knew they were transacting business in New York in connection with their investments in Fairfield Sentry. (*Id.*). The private placement memoranda alerted Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion that:

> Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS; BLMIS performed all investment management duties for these assets; BLMIS was registered with the SEC; BLMIS was the executing broker for Fairfield Sentry's investment, and purportedly operated and executed the [split strike conversion strategy] on the funds' behalf; BLMIS's [split strike conversion [s]trategy purportedly involved the purchase on U.S. equities, U.S. options, and Treasury Bills, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; Fairfield Sentry's investment documents provided that subscription payments we wired in U.S. dollars to New York; BLMIS was the custodian of Fairfield Sentry's investments with BLMIS; and BLMIS was 'essential to the continued operation of' Fairfield Sentry.

(*Id.*).

The Trustee also alleges that by executing the subscription agreements with Fairfield Sentry, Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion submitted to the jurisdiction of New York as the agreement specified that those defendants:

> (i) '[A]greed that any suit, action, or proceeding . . . with respect to this Agreement and the Fund may be brought in New York,' (ii) 'irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding,' (iii) 'consent[ed] to the service of process out of any New York court,' and (iv) agreed that '[t]his Agreement shall be governed and enforced in accordance with the laws of New York . . . .

(*Id.* at ¶ 63). Though the subscription agreements do not, alone, give this Court jurisdiction over Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion as discussed *infra* in footnote five, the agreements show that those defendants were willing to, and knew that they could, face litigation in New York courts.

ii. *Rye Funds Subscription Agreements*

The Trustee has also alleged that Royal Bank of Canada and Guernroy each signed subscription agreements with the Rye Funds and that each time they signed, Royal Bank of Canada and Guernroy affirmed that they received and read the Rye Funds' prospectus. (Am. Compl. ¶ 72). Based on these defendants having acknowledged reading the prospectus, the Trustee has alleged that Royal Bank of Canada and Guernroy knew they were transacting business in New York in connection with their investment in the Rye Funds. (*Id.*). The Trustee has alleged that the Rye Funds prospectus "provided essentially the same information as [Fairfield Sentry's private placement memoranda], including that Rye Funds' assets would be invested with a manager using the [split strike conversion] strategy" and that the Rye Funds would be held in "'a brokerage account with an NASD registered broker dealer.'" (*Id.* ¶ 72–73). The Trustee has also alleged that the Rye Funds' due diligence questionnaires alerted Royal Bank of Canada and Guernroy that the funds were traded in the U.S. equity market and that cash would be held in U.S. short term treasury bills. (*Id.*). Based on having read those documents, the Trustee has alleged that the Royal Bank of Canada and Guernroy "knew that redemption from [the Rye Funds'] account should have resulted in the investment manager liquidating U.S. securities." (*Id.* ¶ 72).

The Trustee also alleges that by executing the subscription agreements with the Rye Funds, Royal Bank of Canada and Guernroy submitted to the jurisdiction of New York as the agreement specified that those defendants:

> (i) irrevocably agree[d] that any suit, action or proceeding with respect to this Agreement and any or all transactions relating hereto and thereto may be brought in U.S. Federal and state courts in the State of New York," (ii) "irrevocably submit[ted] to the jurisdiction of such courts with respect to any such suit, action or proceeding," (iii) "agree[d] and consent[ed] that service of process as provided by U.S. Federal and New York law may be made upon the Investor in any such

suit, action or proceeding brought in any of said courts," and (iv) and agreed that "[t]his Agreement shall be governed and enforced in accordance with New York law."

(*Id.* at ¶ 63). Though the subscription agreements do not, alone, give this Court jurisdiction over Royal Bank of Canada and Guernroy as discussed *supra* in footnote five, the agreements show that Royal Bank of Canada and Guernroy were willing to, and knew that they could, face litigation in New York courts.

The Amended Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Those defendants' alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Royal Bank of Canada,

Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion for monies they received from

Fairfield Sentry and the Rye Funds. (Am. Compl. ¶¶ 160–163, 171–174, 180–183, 189–194,

ECF No. 145). These allegations are directly related to their investment activities with BLMIS

via Fairfield Sentry and the Rye Funds. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants

received as direct investors in a BLMIS feeder fund arose from the New York contacts such as

sending subscription agreements to New York, wiring funds in U.S. dollars to New York,

sending redemption requests to New York, and receiving redemption payments from a Bank of

New York account in New York, and were the proximate cause of the injuries that the Trustee

sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ,

and RBC Dominion is reasonable and "comport[s] with fair play and substantial justice." *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the

Court may consider include the burden on the defendants, the forum State's interest in

adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the

interstate judicial system's interest in obtaining the most efficient resolution of controversies,

and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 477.

The exercise of jurisdiction is reasonable. Royal Bank of Canada, Guernroy, RBC Trust

Jersey, Banque SYZ, and RBC Dominion are not burdened by this litigation. They actively

participated in this Court's litigation for over ten years. (*See* Mem. L., ECF No. 9) (Defendant's

memorandum of law seeking to withdraw this case from the Bankruptcy Court). They are

represented by U.S. counsel and held bank accounts in New York. (Am. Compl. ¶ 78). They

submitted to the jurisdiction of New York courts when they signed subscription agreements with

Fairfield Sentry and/or the Rye Funds.[5] (Am. Compl. ¶¶ 66–67). The forum and the Trustee

both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v.*

*Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011),

*aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr.

S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y.

2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568

(Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United

---

[5] Even though this Court held that similarly situated defendants' consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that the defendants agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendants is reasonable. *See Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that those defendants used New York bank accounts, the Trustee has met his burden of alleging jurisdiction over each transfer received through those New York bank accounts. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all subsequent transfers at issue in this Complaint.

### 12(b)(6) standard

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations

are true and determine whether, when read together, they plausibly give rise to an entitlement of

relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it

strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $77.2 million in subsequent transfers

made to Defendants by Fairfield Sentry and the Rye Funds. (Am. Compl. ¶ 2, ECF No. 145).

**Adoption by Reference**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).

Whether the Fairfield and Tremont Complaints properly plead the avoidability of the

initial transfer is governed by Rule 9(b).  Rule 9(b) states: "In alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee,
> applicable Second Circuit precedent instructs courts to adopt a more liberal view
> since a trustee is an outsider to the transaction who must plead fraud from second-
> hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of
> personal knowledge is compounded with complicated issues and transactions that
> extend over lengthy periods of time, the trustee's handicap increases, and even
> greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned

up).

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. Pro. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by

reference elsewhere in the same pleading or in any other pleading or motion."

<u>Whether the Trustee has properly adopted the Fairfield Complaint</u>

Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque SYZ, and RBC Dominion

argue that wholesale incorporation of the Fairfield Complaint violates the "short and plain

statement" and "simple, concise, and direct" pleading standards set forth by Fed. R. Civ. Pro

8(a).  (Mem. L. 35).  Those defendants contend that the adoption of the Fairfield Complaint

would expand the scope of this adversary proceeding to all claims against all defendants in the

Fairfield Complaint.  (*Id.* at 37–38).

The district court has already found that adoption by reference of the Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up). The Court will follow the district court's instruction in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §550(a))*.

As was explained in *In re Geiger,* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010), pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not

constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau*

*Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr.

D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute

different 'cases.'").

     Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. Royal Bank of Canada, Guernroy, RBC Trust Jersey, Banque

SYZ, and RBC Dominion, like many subsequent transfer defendants in this SIPA proceeding, are

aware of what has been filed in the other adversary proceeding in this SIPA liquidation. They

routinely follow what is happening on a proceeding-wide basis. (*See* Letter, ECF No. 31)

(defendants' letter to Judge Bernstein regarding the Trustee's omnibus motion for leave to

replead and requesting further proceedings on the extraterritoriality issue).

     Through the adoption of the Fairfield Complaint the Trustee has adequately pleaded, with

particularity, the avoidability of the initial transfers due to Fairfield Sentry's knowledge of

BLMIS's fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v.*

*BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 550(a))*, 501 B.R. 26, 36 (S.D.N.Y.

2013) ("[T]he Court directs that the following adversary proceedings be returned to the

Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

<u>Whether the Trustee has properly adopted the Tremont Complaint</u>

     Royal Bank of Canada, Guernroy, and RBC Alternative argue that the Trustee improperly

adopted the Tremont Complaint by reference because the adoption of an entire complaint is

beyond the limits of Federal Rule of Civil Procedure 10(c) and violates the "short and plain

statement" and "simple, concise, and direct" pleading standards set forth by Fed. R. Civ. Pro 8(a).  (Mem. L. 22, ECF No. 138).

Though the Trustee alleges that Tremont had actual knowledge[6] of BLMIS's fraud in the Amended Complaint, Royal Bank of Canada, Guernroy, and RBC Alternative also argue that those allegations contradict the allegations in the Tremont Complaint and run afoul the "simple, concise, and direct" requirement of Rule 8(a).  (Mem. L. 38, ECF No. 155).  Royal Bank of Canada, Guernroy, and RBC Alternative insist that the Trustee alleges "varying levels of knowledge of the Rye Funds" in the Amended Complaint and the Tremont Complaint.  (*Id.*)

The Court disagrees.  In the Tremont Complaint, the Trustee presents allegations of indicia of fraud that gave Tremont "actual or constructive knowledge of BLMIS's fraud" in order to demonstrate the avoidability of the initial transfers to Tremont.  (Tremont Compl. ¶ 235).  The Trustee's allegations do not contradict and have not changed.  Just as he did in the Tremont Complaint, the Trustee essentially alleges that the Funds knew or should have known that BLMIS was a fraud. (*Compare* Tremont Compl. ¶ 169 ("Rye Portfolio Limited received each of the [transfers] with actual knowledge of fraud at BLMIS, or, at a minimum, while aware of suspicious facts that would have led Rye Portfolio Limited to inquire further into BLMIS fraud.") *with* Am. Compl. VII) ("Tremont knew that BLMIS's IA business was a fraud,") *and* Am. Compl. ¶ 100, ("Tremont knew there was insufficient volume for dozens, if not hundreds of the trades Madoff purported to complete.")).  In both the Amended Complaint and the Tremont

---

[6] The Rye Funds are not natural persons and can act "solely through the instrumentality of their officers or other duly authorized agents."  *45 John Lofts, LLC v. Meridian Capital Grp., LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 743.  Under New York law, "the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals."  *Id.* (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010)).  With no officers of its own, the Rye Funds acted through the Tremont officers and, as such, the Tremont officers were agents of the Rye Funds.  (Am. Compl. ¶ 70).  An agent's knowledge and acts are imputed to a corporate defendant; Tremont's officer's knowledge is imputed to the Rye Funds.  *45 John Lofts*, 599 B.R. at 743.

Complaint, the Trustee essentially alleges that Tremont refused to participate in practices that would conclusively reveal what it already knew or should have known. The allegations in the Amended Complaint are consistent with and build upon the theory that Tremont knew of BLMIS's fraud, as set forth in the Tremont Complaint.

Just as this Court has held dozens of times with regard to the incorporation by reference in the Fairfield Complaint and as discussed *supra*, the Tremont Complaint was filed within this SIPA proceeding and is thus filed in the "same action" for the purposes of Federal Rule of Civil Procedure 10(c). *In re Geiger,* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010); *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Picard v. Legacy Capital Ltd. (In re BLMIS),* 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case); *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Royal Bank of Canada, Guernroy, and RBC Alternative, like many subsequent transfer defendants in this SIPA proceeding, are aware of what has been filed in the other adversary

proceedings in this SIPA liquidation and they routinely follow what is happening on a

proceeding-wide basis.  (*See* Letter, ECF No. 31) (defendants' letter to Judge Bernstein

regarding the Trustee's omnibus motion for leave to replead and requesting further proceedings

on the extraterritoriality issue).  The wholesale incorporation of the Tremont Complaint leading

to "confusing and inconvenient" results is not a concern in these proceedings.  *Hinton v. Trans*

*Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F.

App'x 256 (4th Cir. 2010).

The Trustee has adequately pleaded, with particularity, the avoidability of the initial

transfer due to Tremont's knowledge of BLMIS's fraud through both the adoption of the

Tremont Complaint and the allegations contained in the Amended Complaint.  (Am. Compl. ¶

76); (Tremont Compl. ¶¶ 264–74).

Allowing the Trustee to incorporate the Fairfield and Tremont Complaints by reference

does not prejudice defendants.  If the Court were to dismiss this Amended Complaint and permit

the Trustee to further amend his Complaint to include all of the allegations that are already

contained in the Tremont Complaint, all parties would be prejudiced by delay in these already,

overly-prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789

(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021)

("Rule 15 places no time bar on making motions to amend pleadings and permits the amending

of pleadings "when justice so requires.").

**Relation Back**

The Trustee's Complaint alleges $30,687,808 in recently added transfers to RBC

Alternative from Rye Broad Market and Rye Prime Fund and from Rye Portfolio Limited to

Guernroy.  Guernroy, and RBC Alternative argue that the Trustee's new allegations of

subsequent transfers do not "relate back" to the initial pleading because each transaction is a separate and independent from the others. (Mem. L. 18–21, ECF No. 155). As such, those defendants argue that the new allegations are time barred. Guernroy, and RBC Alternative argue that the newly added transfers the Trustee seeks to avoid in the Amended Complaint that pre-date December 8, 2002 cannot be traced to avoidable initial transfers from BLMIS to the Rye Funds.

Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Rule 15 "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations in the original pleading." *Picard v. Madoff* (*In re BLMIS*), 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*") (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)). Rule 15(c) should be "liberally construed." *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983). This is "[t]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021) (quoting *Siegel*, 714 F.2d at 217). Thus, "[t]he principal inquiry . . . is whether the general fact situation alleged in the original pleading provides adequate notice to the opposing party of the matters raised in the amended pleading." *Peter Madoff*, 468 B.R. at 633 (quotations omitted).

New fraudulent transfer claims relate back to the original pleading where the newly

alleged transfers occurred as part of the "same 'course of conduct'" as the originally alleged

transfers. *Peter Madoff*, 468 B.R. at 633 (citing A*delphia Recovery Trust v. Bank of Am., N.A.*,

624 F. Supp. 2d 292, 334 (S.D.N.Y. 2009)).  When examining "conduct" under Rule 15, courts

typically analyze whether "the [recently added transfers] occurred as part of the same course of

conduct as the transfers alleged in the original complaint," and whether "the original complaint

gave sufficient notice to the defendants that the Trustee may sue for additional transfers that

were part of the same course of conduct."  *Hill v. Oria (In re Juliet Homes, LP)*, Bankr. No. 07-

36424, Adv. No. 09-03429, 2011 WL 6817928, at *7 (Bankr. S.D. Tex. Dec. 28, 2011) (citations

omitted) (cleaned up).

The additional transfers relate back to the original complaint.  The original complaint

states: "[T]he Trustee seeks to recover subsequent transfers of Customer Property from BLMIS

feeder funds Fairfield Sentry[,] . . . [Rye Select Portfolio], . . . [Rye Select Broad Market] and . . .

[Rye Prime Fund] . . . to the Defendants totaling $105,569,012.  (Compl. ¶ 2, ECF No. 1.).   As

to the Rye Funds, the Trustee goes on to state: "The Trustee's investigation is ongoing, and the

Trustee reserves the right to: (i) supplement the information on the Rye Portfolio [Limited]

[i]nitial and [s]ubsequent [t]ransfers, Rye . . . Broad Market [i]nitial and [s]ubsequent [t]ransfers,

and Rye Prime Fund [i]nitial and [s]ubsequent [t]ransfers, and (ii) seek recovery of such

additional transfers."  (*Id.* ¶ 98).

As this Court stated about another defendant in a similar litigation, "Defendant[] had over

10 years notice that they would be asked to account for these transfers."  *Picard. v. Fairfield Inv.*

*Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 WL 3477479, at *13

(Bankr. S.D.N.Y. Aug. 6, 2021).  And this Court has been clear that

> the Trustee is an outsider to these transactions and will need discovery to identify the specific subsequent transfers by date, amount and the manner in which they were effected. Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond.

*Id.* (citing *Picard v. Estate of Chais* (*In re BLMIS*), 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011).

Guernroy and RBC Alternative were adequately appraised that the Trustee intended to collect any additional subsequent transfers that were uncovered. The recently added transfers "relate back" and are properly brought.

Recovery of 2001 Subsequent Transfers

Guernroy, and RBC Alternative argue that the newly added transfers the Trustee seeks to avoid in the Amended Complaint that pre-date December 8, 2002 cannot be traced to avoidable initial transfers from BLMIS to the Rye Funds. Guernroy and RBC Alternative argue that the transfers from Rye Broad Market and Rye Prime Fund to RBC Alternative and the transfers from Rye Portfolio Limited to Guernroy "were made on dates preceding the six-year look-back period." (Mem. L. 18, ECF No. 155). The Guernroy and RBC Alternative contend that the Trustee is not only required to plead the avoidability of the initial transfers, but that he must allege that these recently added transfers could have only been discovered recently. (*Id.*).

Section 544(b) of the Bankruptcy Code empowers the Trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." 11 U.S.C. 544(b)(2). Section 544 allows the trustee to "step into the shoes of an unsecured creditor and utilize applicable state law avoidance statutes to recover fraudulently transferred property." *Picard v. Chais* (*In re BLMIS*), 445 B.R. 206 (Bankr. S.D.N.Y. 2011) (citing *Universal Church v. Geltzer*, 463 F.3d 218, 222 n.1 (2d Cir. 2006).

Under New York Law, causes of action predicated on fraud "must be commenced . . . [within]
the greater of six years from the date the cause of action accrued or two years from the time the
plaintiff or the person under who the plaintiff claims discovered the fraud, or could with
reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8) (McKinney 2010)
("NYCPLR").  This "discovery rule" allows the Trustee to seek recovery of additional *initial*
transfers within two years of the discovery of such transfers.  The discovery rule only applies to
initial transfers.

On December 8, 2008, Madoff's fraud was discovered by the world and at least one
unsecured creditor into whose shoes the Trustee could step.  That day the statute of limitations
set out by NYCPLR § 213(8) began to run. On December 7, 2010, within the two-year period
after the fraud was discovered, the Trustee filed an adversary proceeding against Tremont and
dozens its affiliates, including the Rye Funds, to avoid and recover fraudulent transfers of
customer property.  (*See* Tremont Compl., *Picard v. Tremont Grp. Holdings*, Inc., Adv. Pro. 10-
05310, ECF No. 1).  In the Tremont Complaint, the Trustee pleaded the avoidability of initial
transfers from BLMIS to Tremont and the Rye Funds that occurred between 1994[7] and 2008 (the
"Full History of Initial Transfers").  (Tremont Compl. ¶¶ 264–66, Exs. A–B).  Further, when the
Trustee settled with Tremont and the Rye Funds, the Full History of Initial Transfers alleged in
the Tremont Complaint were "deemed avoided."  (Order, Adv Pro. 10-05310-brl, ECF No. 38).
The Trustee met the requirements of the statute of limitations with regard to avoiding the initial
transfers.

Section 550(a)(2) of the Bankruptcy Code grants the Trustee the power to recover
*subsequent* transfers for the benefit of the estate and is not subject to the time same time bar for

---

[7] Though the Trustee successfully pleaded the avoidability of the Tremont and Rye Funds initial transfers from 1994
to 2008, in *Avellino* the Court found that the Trustee cannot recover transfers made prior to 2001, before BLMIS
reorganized as an LLC.  *Picard v. Avellino* (*In re BLMIS*), 528 F. Supp. 3d. (S.D.N.Y. 2021).

recovery as § 544.  *See* 11 U.S.C. § 550.  In the Amended Complaint, the Trustee seeks recovery

of the subsequent transfers at issue under § 550(a)(2). (Am. Compl. ¶ 160, 180 Ex. I).  The

Trustee is not limited to recovering subsequent transfers that occurred during the "six-year

lookback period" as Guernroy and RBC Alternative contend.  As long as the Trustee pleaded the

avoidability of the initial transfers within the time period proscribed by the statute of limitations,

he is free to pursue any subsequent transfers that flowed from those initial transfers[8].  Because

the avoidance of the initial transfers was timely, the subsequent transfers are recoverable.

Whether the subsequent transfers can be traced from the initial transfers alleged by the Trustee is

a question of fact that the Court will address at a later stage of litigation.

Guernroy and RBC Alternative's contention that the Trustee need allege that recently

added transfers were recently discovered comes from their misapplication of the discovery rule

of § 544 to the recovery of subsequent transfers under § 550.  Had the Trustee wished to allege

newly discovered initial transfers, he would need to show that:

> during the period various [t]ransfers were made, Madoff's fraud was either: (1)
> not discovered, and could not have been discovered with reasonable diligence, by
> at least one unsecured creditor; or (2) was only discovered, and could have only
> been discovered with reasonable diligence, by at least one unsecured creditor
> within two years of the [f]iling [d]ate.

*Picard v. Estate of Chais*, 445 B.R. 206, 232.  The Trustee did not allege newly discovered initial

transfers, he alleged newly discovered subsequent transfers.  The Trustee is not required to plead

that initial transfers could have only been discovered recently.  (*Id.*).

The subsequent transfers made "outside the six-year lookback period" are no different

than the subsequent transfers made within that period. As such, the discussion on relation back

---

[8] The Trustee's power to recover subsequent transfers pursuant to § 550 of the Bankruptcy Code is subject to the
statute of limitations set out in subsection (f).  11 U.S.C. § 550(f) ("An action or proceeding under this section may
not be commenced after the earlier of . . . one year after the avoidance of the transfer on account of which recovery
under this section is sought; or . . .  the time the case is closed or dismissed.")

applies to these subsequent transfers as well. Guernroy and RBC Alternative were adequately appraised that the Trustee intended to collect any additional subsequent transfers that were uncovered. The recently added transfers "relate back" and are properly brought.

**The Safe Harbor**

Defendants argue that the "safe harbor," found in § 546(e), bars the Trustee's claims. (Mem. L. 21–32, ECF No. 155). Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. at 197 (emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d Cir. 2014). However, the safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[9]  *Id.*

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).  By holding that the affirmative defense provided by § 546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains.  The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. §546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

---

[9] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out a textual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

On the issue of the safe harbor, the Court adopts the district court's reasoning in *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry and the Rye Funds knew the payments they received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

The Fairfield Sentry Initial Transfers

This Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion. *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of . . . Fairfield [Sentry] had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to . . . Fairfield [Sentry]; and 2) that actual knowledge is imputed to . . .

Fairfield [Sentry] through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; (*see also* Fairfield

Compl. ¶ 320) ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); (Fairfield

Compl. ¶ 321) ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the

fraud at BLMIS"); (Fairfield Compl. ¶ 322) ("FIFL had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 323) ("Stable Fund had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 324) ("FG Limited had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 325) ("FG Bermuda had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 326) ("FG Advisors had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 327) ("Fairfield International Managers had actual knowledge of

the fraud at BLMIS"); (Fairfield Compl. ¶ 328) ("FG Capital had actual knowledge of the fraud

at BLMIS"); (Fairfield Compl. ¶ 329) ("Share Management had actual knowledge of the fraud at

BLMIS"); (Fairfield Compl. ¶ 9) ("It is inescapable that FGG partners knew BLMIS was not

trading securities. They knew BLMIS's returns could not be the result of the split strike

conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading

volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades,

which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and

lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or

custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

The Rye Funds Initial Transfers

Trustee has pleaded allegations of the Tremont's actual knowledge that no securities were being traded. (Am. Compl. ¶¶ 80–146); (Tremont Compl., Adv. Pro. 10-05310, ¶¶ 35–51, 83–274, ECF No. 1).

The Tremont Complaint alleges that the Tremont Group was repeatedly advised of BLMIS trading impossibilities and other indicia of fraud.  (Tremont Compl., ¶ 158, ECF No. 1) (2003 email alerting Tremont management to BLMIS practices consistent with fraud); (*id.* ¶ 194) (internal Tremont email scoffing at potential investor "concerned about Tremont's relationship with Madoff, saying that there was no transparency there and that it was prone to a blow-up that would destabilize Tremont. . . ."); (*id.* ¶ 194) (Tremont more concerned with "feeding 'a lot of money' to Madoff, as opposed to actually understanding what Madoff was doing with that money"); (*id.* ¶ 197) (client unable to reconcile different results from investments with BLMIS directly versus through a Rye fund); (*id.* ¶ 215) (internal Tremont emails questioned use of auditor to investigate BLMIS).  Tremont officers failed to confirm or question information given to it by Madoff regarding the counterparty to trades and "at times also falsely led others to believe they knew the counterparties."  (*Id.* ¶ 190). "The Rye Funds received trade confirmations

from BLMIS reflecting securities transactions thatcould not have occurred, because they took place outside of the range of stock and options prices for such securities traded in the market on the days in question." (*Id.* ¶ 181). Tremont failed to question over 600 instances of this out-of-range information. (*Id.* ¶¶ 181–83).

The Complaint supplies additional allegations of Tremont's knowledge of BLMIS's fraud. Sandra Manzke, Tremont's founder and former CEO, had regular meetings and calls with Madoff and Frank DiPascali. (Am. Compl. ¶ 82–83, ECF No. 124). Robert Schulman, as co-CEO and then sole CEO of Tremont, touted his "special relationship" with Bernard Madoff and how "intimately familiar" he was with Madoff. (Am. Compl. ¶ 84). Others described this relationship in similar terms. In 2003, Tremont told its auditor, Ernst & Young, that "Bob Schulman periodically visits [BLMIS's] facilities throughout the year . . ." and in June 2006, a Tremont vice president informed a potential investor that Schulman was "'intimately familiar' with Madoff based on 'a 10+ year relationship.'" (*Id.*). An investor in two Tremont feeder funds wrote to Schulman to 2001, "I know you are sick of answering this but man is it hot out there with the Bernie [Madoff] fraud rumors." (*Id.* ¶ 86). In 2007, a potential client met with officers of Tremont and discussed whether BLMIS's business was fraudulent and perhaps a Ponzi scheme. (*Id.* ¶ 94). When the potential clients followed up by email with questions about BLMIS, a Tremont officer responded internally that they should "give answers by phone rather than email . . . ." (*Id.* ¶ 95).

Tremont continued to receive warnings from potential investors who were concerned about whether Madoff's strategy involved "trades actually tak[ing] place." (*Id.* ¶ 98). Tremont's own reports showed that BLMIS's reported trades were impossible. (*Id.* ¶ 99). Tremont's estimates showed that there was "insufficient volume for dozens, if not hundreds of the trades

Madoff purported to complete." (*Id.* ¶ 100). Tremont chose to shield BLMIS from inquiries,

"with fabrications of its own, which changed depending on who was asking." (*Id.* ¶ 132). All of

this was overlooked because Tremont, admittedly, made a lot of money for doing nothing other

than allowing investors access to BLMIS. (*Id.* ¶ 142–146).

Here, the Trustee has sufficiently plead that the Rye Funds had actual knowledge that

BLMIS was not trading securities, which makes the safe harbor inapplicable by its express terms.

*Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767,

at *7 (S.D.N.Y. Nov. 3, 2022).

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Picard v. Fairfield Inv. Fund* (*In re BLMIS*),

No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court

determined that the Fairfield and Tremont Complaints are replete with allegations demonstrating

that Fairfield Sentry and the Rye Funds had actual knowledge that BLMIS was not trading

securities. *Id.* at *3–7. Where § 546(e) does not "embrace the initial transfer, the subjective

knowledge of a subsequent transferee cannot retroactively render it applicable." The Trustee's

allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this

issue.

## <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is denied. The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).

**Dated: March 31, 2023**
**Poughkeepsie, New York**



**/s/ Cecelia G. Morris**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**